**Dated: November 9, 2020**

**The following is ORDERED:**



Sarah A Hall
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF OKLAHOMA

|  |  |  |
|---|---|---|
| In re: | ) | |
| | ) | |
| SALLY F. BENTLEY, | ) | Case No. 20-10381 |
| | ) | Chapter 7 |
| Debtor. | ) | |

**ORDER GRANTING IN PART AND DENYING IN PART TRUSTEE'S
OBJECTION TO DEBTOR'S CLAIMED EXEMPTIONS WITH BRIEF
IN SUPPORT WITH NOTICE OF OPPORTUNITY FOR HEARING
AND NOTICE OF HEARING [DOC. 33]**

On September 30, 2020, the Court conducted a telephonic hearing on the objections of

Susan Manchester, chapter 7 trustee ("Trustee"), to the exemptions claimed by debtor Sally F.

Bentley ("Debtor").  At the commencement of the hearing, the Court undertook to summarize

what exemption claims were actually subject to objection by Trustee because the number and

timing of amendments to Debtor's claims of exemption subsequent to the filing of the Trustee's

Objection to Debtor's Claimed Exemptions with Brief in Support with Notice for Opportunity

for Hearing and Notice for Hearing [Doc. 33], filed on July 9, 2020 (as subsequently amended,

the "Objection"), required this Court to diagram the assets claimed as exempt and the authority

therefore as well as the resulting changes to Trustee's Objection.[1]  The Court surmised, and the

parties agreed, the following exemption claims remain subject to objection:

| | | | |
|---|---|---|---|
| BancFirst checking account 3065 (the "Bank Account") | $70,256.08 | $24,903.08 | Okla. Stat. tit. 36, § 3631.1 |
| Bank Account | $70,256.00 | $45,353,00 | 42 U.S.C. 4071; Okla. Stat. tit. 31, § 1.A.20 |
| Northwestern Mutual Annuity 0092 (the "Annuity") | $350,000.00 | $350,000.00 | Okla. Stat. tit. 36, § 3631.1 |
| Annuity | $350,000.00 | $0.00 | Okla. Stat. tit. 31, § 1.A.20 |

Testimony was provided by Debtor, her son Nick Bentley, and Jim Lawson, an accountant hired

by Trustee to analyze the deposits and withdrawals from the Bank Account ("Accountant").

Other than to highlight the apparent lack of importance Debtor and her counsel placed on the

accuracy of her Schedules and SOFA, Debtor's testimony and that of her son were relatively

unhelpful.  The work product of the Accountant, Trustee Ex. 10 (the "Trustee Accounting"), was

---

[1]Determining the exemptions claimed and the objections thereto would not have been such a daunting task had Debtor and her counsel taken seriously Debtor's obligation to complete her schedules (as amended, "Schedules") and Statement of Financial Affairs (as amended, "SOFA") completely and accurately.  The fact the Bankruptcy Code requires debtors to execute schedules and statements of financial affairs under penalty of perjury is "neither coincidence or accident. Administration of a bankruptcy case is greatly impaired unless these documents are prepared carefully, thoughtfully and accurately." Woolman v. Wallace (In re Wallace), 289 B.R. 428, 435 (Bankr. N.D. Okla. 2003).  As of this hearing, Trustee was still waiting on amendments to the Schedules, and Debtor and her counsel were less than diligent in fully completing her Schedules and SOFA.  No trustee, creditor, or court should be forced to solve a puzzle like the one created by Debtor and her counsel in this case due to their lack of preparation and frank and diligent discussion between Debtor and her counsel when preparing the Schedules and SOFA, and such conduct will not be tolerated in the future.

extremely helpful, with his testimony identifying his accounting background and the process he used to create the Trustee Accounting.

## FINDINGS OF FACT

1.  Debtor's late husband owned an interest in Sarah Properties, LLC d/b/a Lucky Dog Lodge (the "Business") and envisioned the income stream from the Business to be a future source of income during his and Debtor's retirement.

2.  After he passed, Debtor sold the interest in the Business in 2018 and determined she needed to convert the vast majority of the sale proceeds into an income stream for her retirement.  Hence, she purchased the Annuity.

3.  Debtor entered into a Single Premium Immediate Income Annuity with Northwestern Mutual ("Northwestern"), effective July 10, 2018, with a single purchase payment of $350,000.00.  Trustee Ex. 7, p. 1.

4.  The Annuity has no cash surrender value or loan value and provides no cash refund on Debtor's death.  Trustee Ex. 7, p. 6.

5.  Ownership of the Annuity can be transferred, and the Annuity may be assigned as collateral.  Trustee Ex. 7, pp. 13 and 15.

6.  The Annuity is a non-qualified annuity.[2]

---

[2]"In the context of retirement plans and arrangements, 'qualified' has a specific meaning. In re Adams, 2020 OK 80, ¶ 22, 2020 WL 5792178 (2020).  A non-qualified annuity is an annuity not purchased to be held in a tax-advantaged retirement account.  Snead v. Wright, 427 F.Supp.3d 1133, 1139 (D. Alaska 2019); In re Crowl, 415 B.R. 849, 851 (Bankr. N.D. Okla. 2009) (a non-qualified plan does not qualify for favorable tax treatment); In re Roberts, 2005 WL 1924180 (Bankr. M.D. La. 2005) (a non-qualified plan is funded with money that has already been taxed).

7.    The Annuity provides for a guaranteed monthly payment of $1,570.40 ("Guaranteed

Payment") commencing August 1, 2018, for a five year period (the "Period Certain").

Trustee Ex. 7, p. 1.  If Debtor dies during the Period Certain, her sons, as the named

beneficiaries, will receive the remaining Guaranteed Payments due during the Period

Certain.  If Debtor dies after conclusion of the Period Certain, the Guaranteed Payments

will cease, and no death benefits will be payable.  Trustee Ex. 7, pp. 1, 11, and 12.

8.    In addition to the Guaranteed Payments, Debtor is also entitled to receive dividends in the

amount of $603.94 per month effective August 1, 2019 (the "Dividend Payment").

Trustee Ex. 7, pp. 5 and 10.  Accordingly, since August 1, 2019, Debtor has received a

combined monthly payment of $2,174.34 from Northwestern.

9.    Debtor receives an IRS 1099 Form for the distributions she receives from the Annuity.

10.    The Guaranteed Payments and the Dividend Payments are direct deposited into the Bank

Account.

11.    The Bank Account is an interest-bearing checking account with BancFirst.

12.    Debtor refers to the Bank Account as her retirement account, but it is not a "retirement"

account.  It is simply a checking account into which she deposits retirement funds.

13.    Debtor's retirement funds are comprised of the following:  Social Security Benefits; the

Guaranteed Payment and the Dividend Payment; and required minimum distributions

from Debtor's IRA ("RMDs").[3]  All of these funds are deposited by the payor directly

---

[3]Initially, Debtor claimed the RMDs deposited in the Bank Account as exempt, and
Trustee objected to such claim of exemption based on <u>Carbaugh v. Carbaugh</u> (<u>In re Carbaugh</u>,
278 B.R. 512 (10th Cir. BAP 2002), which provides funds in an IRA are only exempt while part
of the exempt fund and not after distribution.  Subsequently, Debtor withdrew her claim of

(continued...)

into the Bank Account.  Debtor believed the funds in the Bank Account were all exempt

retirement funds (other than the occasional deposit made by Debtor therein).

14.    Debtor began having her monthly RMDs in the amount of $2,457.00 deposited directly

into the Bank Account in February, 2019.  Trustee Ex. 7.

15.    An additional $28,594.00 was also deposited into the Bank Account from non-retirement

funds.  Trustee Ex. 9 and 10.

## **LEGAL CONCLUSIONS**

Section 522 of the Bankruptcy Code permits a debtor to exempt certain property from the

estate and "place it beyond the reach of creditors."  In re Crowl, 415 B.R. 849, 851 (Bankr. N.D.

Okla. 2009) (citing 11 U.S.C. § 522).  A claim of exemption must be claimed by a debtor

pursuant to Federal Rule of Bankruptcy Procedure 4003(a).  Exemptions claimed by a debtor are

presumed valid until proven otherwise.  To overcome the presumption of validity, the objecting

party must provide evidence in rebuttal.  Fed. R. Bankr, P. 4003(a) and ©; Jenkins v. Hodes

(In re Hodes), 402 F.3d 1005, (10th Cir. 2005); Kennedy v. Martinez (In re Kennedy), 336 B.R.

600 (10th Cir. BAP 2005).  The objecting party must prove by a preponderance of the evidence

that the exemption is improper.  Crowl, 415 B.R. at 850.  "If the trustee fails to carry the burden

of proving by a preponderance of the evidence that the exemption should be disallowed, the

exemption will stand.  In re Mann, 201 B.R. 910, 915 (Bankr. E.D. Mich.1996); LaForest v.

Roberts, 2010 WL 1223921 (E.D. Tenn. 2010).

---

[3](...continued)
exemption for the RMDs in the Bank Account.  Nevertheless, in her Closing Arguments, Debtor,
once again, claims the RMDs to be exempt.

If the objecting party successfully rebuts the presumption of validity, the burden shifts to the debtor to come forward to demonstrate the validity. Kennedy, 336 B.R. 600. When an issue is in doubt because of the proof provided, and the Court would otherwise be required to speculate, the party upon whom the burden of proof ultimately rests must lose. Cadle Co. v. Friedheim (In re Friedheim), 2007 WL 2325613 (N.D. Tex. 2007).

Under 11 U.S.C. § 522(b)(1), Oklahoma opted out of the federal exemption scheme under the Bankruptcy Code, thereby limiting the exemptions available to debtors in Oklahoma to those allowed under state law. In re McMasters, 220 B.R. 419, 423 (Bankr. N.D. Okla. 1998). Consequently, the Oklahoma bankruptcy courts look to applicable Oklahoma law when determining the validity of a debtor's claim to a state law exemption. Williamson v. Hall (In re Hall), 441 B.R. 680, 685 (10th Cir. BAP 2009).

On a side note, at the hearing, both Trustee and Debtor got side-tracked, focusing on issues not relevant to the exemption analysis. Trustee repeatedly wanted to highlight the number of amendments to the Schedules and SOFA that had been made and remained to be made, and consequently the obvious inaccuracies of the Schedules and SOFA as originally prepared, signed, and filed by Debtor and her counsel. Trustee also attempted to taint Debtor's efforts to create and protect retirement funds as if such actions were relevant to the validity of her claims of exemptions. However, the United States Supreme Court discredited the use of equitable principles as a basis to disallow exemptions in Law v. Siegel, 571 U.S. 415, 134 S.Ct. 1188, 188 L.Ed.2d 146 (2014). Gray v. Warfield (In re Gray), 523 B.R. 170, 173 (9th Cir. BAP 2014). As a result, this Court cannot use general equitable powers to deny exemption claims as a result

of Debtor's alleged bad faith conduct. <u>Clabaugh v. Grant</u> (<u>In re Grant</u>), 658 F. App'x 411, 414 (10th Cir. 2016) (citing <u>Law v. Siegel</u>, 134 U.S. at 1196)).

Along similar lines, Debtor repeatedly focused on her intent to create a retirement account in the Bank Account and her intent to first use non-exempt funds from the Bank Account before using any exempt funds.  A debtor's intent to make property exempt, does not, by itself make the property exempt.  <u>In re Smith</u>, 570 B.R. 844, 854 (Bankr D. Idaho 2017).  The debtor's actions, and the alleged exempt asset, must satisfy the requirements of the statutory exemption notwithstanding the debtor's actual intent.  <u>In re Ludwig</u>, 345 B.R. 310, 320 (Bankr. D. Colo. 2006) (citing <u>In re Ellis</u>, 274 B.R. 782, 788 (Bankr. S.D. Ill. 2002) (holding annuity for payment of lottery proceeds was not exempt under 26 U.S.C. § 408(b) merely because "in her mind" debtor entered into annuity "for purposes of retirement"); <u>In re Rogers</u>, supra., at 351 (holding California exemption statute "does not extend to protect anything a debtor unilaterally chooses to claim as intended for retirement purposes")).

Setting aside these arguments, the Court will first address the RMDs' exempt status.  It will then address Debtor's exemption claim in the Annuity and the Bank Account.

## I.    <u>ONCE DEPOSITED, THE RMDs LOST THEIR EXEMPT STATUS.</u>

Although this Court believed Debtor no longer claimed an exemption in her RMDs the Bank Account, the Debtor's Closing Argument asserts to the contrary.  Debtor claims the funds in the Bank Account derived from the IRA are exempt pursuant to Okla. Stat. tit. 31, § 1.A.20.  This Court disagrees for a simple reason.  The unambiguous language of Section 1.A.20 is clear –  what is exempt thereunder is "any interest in a retirement plan or arrangement qualified for tax exemption or deferment purposes."

The task of interpreting Section 1.A.20 begins with the plain language of the statute and, in this instance, it is also where the task ends.  Arkla Expl. Co. v. Norwest Bank of Minneapolis, Nat'l. Ass'n, 948 F.2d 656, 658 (10th Cir. 1991).  "When interpreting Oklahoma law, this Court must give effect to the intent of the legislature, which is presumed to be expressed in the plain language of the statute.  Brookside, LLC v. White (In re White), 556 B.R. 489, 495 (Bankr. N.D. Okla. 2016) (citing Yocum v. Greenbriar Nursing Home, 130 P.3d 213, 219 (Okla. 2005)).  Section 1.A.20 discusses only an interest in the plan itself.  Nowhere does it address proceeds, benefits, or distributions from a plan.  Thus, Section 1.A.20 plainly exempts only ***an interest in a plan or arrangement*** and not the proceeds thereof.

A similar statute was evaluated by the Tenth Circuit Court of Appeals in Gordon v. Wadsworth (In re Gordon), 791 F.3d 1182 (10th Cir, 2015), wherein application of a Colorado exemption statute, exempting "Property, including funds, held in or payable from any pension or retirement plan of deferred compensation plan," was at issue.  The court concluded such language did not protect funds distributed from a retirement plan but only the assets in or payable from a retirement plan itself.  Gordon, 791 F.3d at 1185.  The reasoning of the court – that the "straightforward meaning" of the applicable statute protected only property held in or payable from a plan – is equally applicable to the language of Section 1.A.20.  Gordon, 791 F.3d at 1185.[4]  A straightforward reading of Section 1.A.20 makes it clear only a debtor's

---

[4]The Tenth Circuit Bankruptcy Appellate Panel found similarly in Carbaugh, 278 B.R. at 522-523, wherein it interpreted the Kansas exemption statute, Kan. Stat. Ann. § 60–2308(b), which exempts "any money or other assets payable to a participant or beneficiary from, or any interest of any participant or beneficiary in a [qualified retirement plan] shall be exempt. . . ." Carbaugh concluded the language of Section 60-2308(b) protects either money or assets payable from a qualified retirement plan or the interest of a participant or beneficiary in such a plan but

(continued...)

interest in a retirement plan or arrangement is exempt; the distributions therefrom are not.[5]

Debtor, perhaps in an effort to overcome the plain language of Section 1.A.20, suggests Clark v. Rameker, 573 U.S. 122 (2014), provides a basis for this Court to consider the Bank Account as a retirement account, including the RMDs, based on Debtor's intent that it contain her retirement funds.  Debtor is mistaken.  Clark, in fact, very specifically states, when interpreting the federal exemption available[6] under 11 U.S.C. § 522b)(3)(c), which exempts "retirement funds to the extent those funds are in a fund or account that is exempt from taxation under" certain provisions of the Internal Revenue Code, courts should not "engage in case-by-case, fact-intensive examination into whether the debtor actually planned to use the funds for retirement."  Clark, 573 U.S. at 127.  Clark renders Debtor's subjective purpose for the Bank Account neither relevant nor controlling.

Based on the evidence, the Bank Account is not a "retirement plan or arrangement qualified for tax exemption or deferment purposes"; it is simply an interest-bearing checking account.  And, while the IRA itself is exempt under Section 1.A.20, the RMDs, once distributed and deposited into the Bank Account, were not exempt under Section 1.A.20 based on its express language.

---

[4](...continued)
not to funds already paid.  Carbaugh, 278 B.R. at 522-523.

[5]The Oklahoma legislature knows how to extend the protection of exemption statutes to specifically cover proceeds.  Reference can be made to Okla. Stat. tit. 36, § 3631.1 which specifically includes "policy proceeds" . . . "either before or after said money or benefits is or are paid or rendered" within the scope of such exemption.

[6]Section 522(b)(3)(c) is not applicable to Debtor as Oklahoma has opted out of the federal exemptions.

-9-

## II.  **THE ANNUITY IS EXEMPT**

Debtor claims the Annuity to be exempt under either Okla. Stat. tit. 31, § 1.20.A. or Okla. Stat. tit. 36, § 3631.1.  Trustee objects, claiming the Annuity is not (I) "qualified for tax exemption" as required for Section 1.20.A. to apply, nor is it (ii) a policy of insurance, group annuity contract, plan or program of annuities or benefits as required for Section 3631.1 to apply. The Court agrees in part, finding the Annuity to be exempt under Section 3631.1 but not under Section 1.20.A.

### A.  **The Annuity is Exempt under Okla. Stat. tit. 36, § 3631.1.**

Okla. Stat. tit. 36, § 3631.1.A, provides:

> All money or benefits of any kind, including policy proceeds and cash values, to be paid or rendered to the insured or any beneficiary under any policy of insurance issued by a life, health or accident insurance company, under any policy issued by a mutual benefit association, or under any plan or program of annuities and benefits, shall:
>
> 1.  Inure exclusively to the benefit of the person for whose use and benefit the money or benefits are designated in the policy, plan or program;
>
> 2.  Be fully exempt from execution, attachment, garnishment or other process;
>
> 3.  Be fully exempt from being seized, taken or appropriated or applied by any legal or equitable process or operation of law to pay any debt or liability of the insured or of any beneficiary, either before or after said money or benefits is or are paid or rendered; and
>
> 4.  Be fully exempt from all demands in any bankruptcy proceeding of the insured or beneficiary.

Trustee claims Section 3631.1 does not apply to the Annuity because it is not a policy of insurance issued by a life, health or accident insurance company, a policy issued by a mutual benefit association, or under any plan or program of annuities and benefits. In contrast, Debtor argues the plain language of Section 3631.1 clearly exempts the Annuity.

Contrary to Trustee's varied arguments, the Annuity, Title 36, and the Oklahoma Supreme Court provide the necessary foundation for concluding the Annuity is covered by Section 3631.1. First, the Annuity itself was issued in Oklahoma and the applicable governing body is identified as the Oklahoma Department of Insurance. Trustee Ex. 7, p. 3. A quick search of Title 36 of the Oklahoma Statutes, which governs insurance in Oklahoma, reveals over 150 references to annuity or annuities therein. Article 40 of Title 36 specifically governs life insurance and annuities. Of equal significance is the Oklahoma Supreme Court's recognition that:

> [A]nnuities are considered generally as an insurance product and not as an investment. In our opinion, life annuity policies are of a risk-shifting character and contingent on the duration of one's life, just as is the case with life insurance.
>
> We regard an annuity as being included within the term 'insurance' as set forth in 36 O.S. 1957 Supp. § 102[7] where such latter term is defined as a contract to pay a specified amount upon determinable contingencies. Such contingencies in the case of life annuities are that the policy-holders shall continue to live.

---

[7]The definition of "Insurance" remains the same today, "a contract whereby one undertakes to indemnify another or to pay a specified amount upon determinable contingencies." Okla. Stat. tit. 36, § 102. And, "[l]ife insurance" means contracts that incorporate mortality risk, including annuity and pure endowment contracts, and as may be specified in the valuation manual." Okla. Stat. tit. 36, § 1510.

-11-

Hunt v. Equitable Life Asssurance Soc'y Of United States, 399 P.2d 487, 498 (Okla. 1965).  As a result, the inclusion of annuities within Section 3631.1 is clearly intentional and does not create an ambiguity because it has been recognized as a policy of insurance per the Oklahoma Supreme Court.

Trustee further argues the Annuity is not part of a "plan or program of annuities" and, therefore, does not fall within Section 3631.1 by artificially imposing a requirement that the plan or program be issued by an employer.  Contrary to Trustee's argument, however, nothing in Section 3631.1.A. requires a plan or program of annuities be issued by or related to an employer to fall within its purview.  In fact, her recitation to several provisions in Title 36 linking the terms "plan" and "program" with employers serves to illustrate the Oklahoma legislature knew how to limit or otherwise condition those terms when desired.  It is not the Court's function to impose requirements or conditions in statutes where not otherwise imposed by the legislature.  Cox v. State ex rel. Oklahoma Dep't Of Human Services, 87 P.3d 607, 617 (Okla. 2004).  As written, Section 3631.1.A. does not limit the plan or program of annuities to which it applies to only those issued by employers.

Judge Terrence Michael from the Northern District of Oklahoma reached the same conclusions in Crowl, wherein the issue was "whether an annuity unrelated to a life insurance policy qualifies as exempt under Oklahoma law" specifically Section 3631.1.   The trustee in Crowl sought to limit the application of Section 3631.1 to annuities connected to a life insurance policy.  Judge Michael rejected the argument by referring to the Oklahoma rules of statutory construction and the language of Section 3631.1. itself:

1.  Federal courts interpret a state's laws according to the state's rules of statutory construction. Under Oklahoma law, the rule is simple, look first to the statute – where the statute is plain and unambiguous, there is no room for judicial construction that will extend or limit the reach of a statute beyond the plain and unambiguous language. Crowl, 415 B.R. at 852.[8]

2.  Much of Section 3631.1. does deal with life insurance policies, and it is contained within the title of the Oklahoma Statutes specifically addressing insurance. Crowl, 415 B.R. at 852. However, this is not sufficient to contradict the plain meaning of Section 3631.1 – the statute plainly states it applies to various insurance policies "**or** under any plan or program of annuities and benefits." Crowl, 415 B.R. at 852. The term "or" is alternative in nature, meaning an annuity is a separate item that may be claimed as exempt. Crowl, 415 B.R. at 852.

3.  "If the Oklahoma legislature wants to limit the scope of annuities that may be claimed as exempt, they know how to do so. Unless and until the Oklahoma legislature limits the exemption, the Court will not do so of its own accord." Crowl, 415 B.R. at 854.

This Court agrees; Section 3631.1 is plain and unambiguous. "When a statute is plain and unambiguous, there is no need to resort to statutory construction nor does any justification exist for the use of interpretive devices to fabricate a different meaning. Rouse v. Oklahoma Merit Prot. Comm'n, 345 P.3d 366, 373–74, as corrected (Okla. 2015) (citing Twin Hills Golf &

---

[8]When interpreting an Oklahoma statute, federal courts use Oklahoma's "rules of statutory construction." Stokes v. United States, 967 F.3d 1034, 1040 (10th Cir. 2020) (citing Ward v. Utah, 398 F.3d 1239, 1248 (10th Cir. 2005)).

Country Club, Inc. v. Town of Forest Park, 123 P.3d 5 (Okla. 2005); Strong v. State of Oklahoma ex rel. the Oklahoma Police Pension and Retirement Board, 115 P.3d 889 (Okla. 2005)). Where the legislature has clearly expressed its intent, the use of additional rules of construction are almost always unnecessary and the statute should be applied as written. Samman v. Multiple Injury Trust Fund, 33 P.3d 302, 307 (Okla. 2001) (citing Bruner v. Sobel, 961 P.2d 815, 817 (Okla. 1998)); Murray County v. Home Sales, Inc., 330 P.3d 519, 524 (Okla. 2014). The plain meaning of the statute is conclusive except in the rare case when literal construction produces a result demonstrably at odds with the legislative intent. Samman, 33 P.3d at 307 (citing City of Tulsa v. Public Employees Relations Bd., 967 P.2d 1214, 1220 (Okla. 1998)). "So we will not look beyond the statute's text if "the language of the statute is plain and unambiguous."" Stokes, 967 F.3d at 1040 (citing Antini v. Antini, 440 P.3d 57, 60 (Okla. 2019)).[9]

The Court rejects Trustee's request to certify the question of whether the Annuity is exempt under Section 3631.1. First, the decision to certify a question of state law to the state's highest court rests within the discretion of the federal court. Oliveros v. Mitchell, 449 F.3d 1091, 1093 (10th Cir. 2006) (citing Armijo v. Ex Cam, Inc., 843 F.2d 406, 407 (10th Cir. 1988)). "Although certification may be appropriate in certain cases, it 'is never compelled[.]'" Odom v. Penske Truck Leasing Co., LP, 2016 WL 11593856 (W.D. Okla. 2016) (citing Boyd Rosene and Associates, Inc. v. Kansas Municipal Gas Agency, 178 F.3d 1363, 1365 (10th Cir. 1999)).

---

[9]This interpretation is consistent with Oklahoma's liberal interpretation of Section 3631.1's exemption. Courts presume "the Legislature expressed its intent to grant the broadest possible exemption with this language, and it intended what it expressed." Carts & Parts, Inc. v. Rosales, 225 P.3d 1, 4 (Okla. Ct. App. 2009) (citing King v. King, 107 P.3d 570, 579 (Okla. Ct. App. 2005)).

-14-

Second, certification should not be routinely invoked whenever a federal court is faced with a state statute that has not been interpreted by the state's highest court. Colony Ins. Co. v. Burke, 698 F.3d 1222, 1235 (10th Cir. 2012). "[F]ederal courts bear a duty to decide questions of state law when necessary to render" a decision. Colony Ins., 698 F.3d at 1235 (citing Kan. Judicial Review v. Stout, 519 F.3d 1107, 1119 (10th Cir. 2008)). Where the state's highest court has not addressed the issue presented, the federal court must determine what decision the state's highest court could make if faced with the same facts and issue. Oliveros, 449 F.3d at 1093(citing Armijo, 843 F.2d at 407)). Per the Tenth Circuit Court of Appeals:

> [W]e apply judgment and restraint before certifying," and "will not trouble our sister state courts every time an arguably unsettled question of state law comes across our desks. When we see a reasonably clear and principled course, we will seek to follow it ourselves."

Colony Ins., 698 F.3d at 1235-1236 (citing Pino v. United States, 507 F.3d 1233, 1236 (10th Cir. 2007)).

Here the path is clear and straightforward. The statutory language of Section 3631.1 is plain and unambiguous. Following the rules of statutory construction spelled out by the Oklahoma Supreme Court results in only one possible interpretation of Section 3631.1 – that the Annuity is exempt thereunder. While the Oklahoma Supreme Court has not had the opportunity to interpret the scope of the exemption in Section 3631.1 as it applies to an annuity such as the Annuity[10], the Court believes the Oklahoma Supreme Court would agree with the Court's

---

[10]Trustee places great importance on the decision of the Oklahoma Court of Civil Appeals in State of Oklahoma, ex rel. University Hospitals v. Annesley, 976 P.2d 1109 (Okla. Ct. App. 1999). However, such decision is distinguishable as the court therein was faced with an annuity purchased as part of a structured settlement of a medical malpractice claim. The court in

(continued...)

-15-

interpretation of the scope of Section 3631.1 and find the Annuity to be exempt thereunder.[11]

Accordingly, the Annuity is exempt under Section 3631.1.

**B.    The Annuity is not Exempt under Okla. Stat. tit. 31, § 1.A.20.**

Okla. Stat. tit. 31, § 1.A.20 provides:

> A.    Except as otherwise provided in this title and notwithstanding subsection B of this section, the following property shall be reserved to every person in the state, exempt from attachment or execution and every other species of forced sale for the payment of debts, except as herein provided:
>
> .    .    .
>
> 20.    Subject to the Uniform Fraudulent Transfer Act, Section 112 et seq. of Title 24 of the Oklahoma Statutes, any interest in a retirement plan or arrangement qualified for tax exemption or deferment purposes under present or future Acts of Congress; provided, any transfer or rollover contribution between retirement plans or arrangements which avoids current federal income taxation shall not be deemed a transfer which is fraudulent as to a creditor under the Uniform Fraudulent Transfer Act.  "Retirement plan or arrangement qualified for tax exemption purposes" shall include without limitation, trusts, custodial accounts, insurance, annuity contracts and other properties and rights constituting a part thereof.  By way of example and not by

---

[10](...continued)
University Hospitals, found the annuity in question bore "little resemblance to the various forms of periodic "insurance" payments governed by the Oklahoma insurance code and protected from creditor claims by [Section] 3631.1."  Based on the true nature of the asset, i.e. the "fruit of a claim for "personal bodily injury," the Court found the annuity was subject to the limited exemption under Okla. Stat. tit. 31, § 1.A.21 rather than Section 3631.1.  In this Court's opinion, the plain language of Section 3631.1, the clear intent of the legislature to subject annuities such as the Annuity to the provisions of Title 36 of the Oklahoma Statutes, and the Hunt decision mandate a different result in this case.

[11]This conclusion is buttressed by the prior holding of the Oklahoma Supreme Court that annuities based on the life of the owner, such as the Annuity purchased by Debtor, are an insurance product.  Hunt, 399 P.2d at 498.

limitation, retirement plans or arrangements qualified for
tax exemption or deferment purposes permitted under
present Acts of Congress include defined contribution plans
and defined benefit plans as defined under the Internal
Revenue Code ("IRC"), individual retirement accounts,
individual retirement annuities, simplified employee
pension plans, Keogh plans, IRC Section 403(a) annuity
plans, IRC Section 403(b) annuities, Roth individual
retirement accounts created pursuant to IRC Section 408A,
educational individual retirement accounts created
pursuant to IRC Section 530 and eligible state deferred
compensation plans governed under IRC Section 457. This
provision shall be in addition to and not a limitation of any
other provision of the Oklahoma Statutes which grants an
exemption from attachment or execution and every other
species of forced sale for the payment of debts. This
provision shall be effective for retirement plans and
arrangements in existence on, or created after April 16,
1987[.]

Trustee claims Section 1.A.20 does not exempt the Annuity while Debtor claims it does. Based

on a recent decision of the Oklahoma Supreme Court on a certified question from this Court, the

Annuity is not exempt under Section 1.A.20.

In In re Adams, 2020 OK 80, ¶ 22, 2020 WL 5792178 (2020), the Oklahoma Supreme

Court held Section 1.A.20 only covers retirement plans or arrangements qualified for tax

exemption or deferment purposes. Adams, 2020 WL 5792178. To be covered, the plan or

arrangement must be designated for retirement purposes. This means the plan or arrangement

protects funds that a plan participant will rely upon for retirement and involves a tradeoff

whereby the participant invests their money and gains certain tax benefits in the future but must

forfeit access to the money until retirement subject to substantial early withdrawal penalties.

Adams, 2020 WL 5792178. In short, the plan or arrangement must also be "qualified for tax

exemption or deferment purposes" to qualify for exemption under Section 1.A.20.

-17-

In this instance, the Annuity expressly states it is "non-tax qualified."  Trustee Ex. 7, p. 1.

And, Debtor presented no evidence suggesting the Annuity was otherwise qualified for tax

exemption or deferment.  Under <u>Adams</u>, this ends the discussion, and the Annuity is not exempt

under Section 1.A.20.[12]

## III.    <u>A PORTION OF THE BANK ACCOUNT IS EXEMPT.</u>

Debtor claims an exemption in the entirety of the balance of the Bank Account under two

statutory provisions:  Okla. Stat. tit. 36, § 3631.1 (proceeds from Annuity)[13] and 42 U.S.C. § 407

(Social Security benefits).[14]  These two provisions exempt the Annuity proceeds and the Social

Security benefit proceeds in the Bank Account.  The challenge arises because: (I) other monies

were deposited into the Bank Account which are not exempt, specifically the RMDs from

Debtor's IRA and miscellaneous deposits made by Debtor; and (ii) Debtor also took periodic

withdrawals from the Bank Account.

All is not lost, however.  Exempt funds held by a debtor in a bank account and

commingled with non-exempt funds will remain exempt provided the exempt funds are

reasonably traceable to their exempt source.  <u>In re Tydings</u>, 2020 WL 1510025 (Bankr. W.D.

---

[12]Debtor testified her husband intended the Business to be an income source during their retirement.  However, that is where the similarity to a retirement plan or arrangement ends. When Debtor sold her interest in the business, she received the sale proceeds and paid taxes on the sale proceeds.  Then, Debtor paid the $350,000 single payment premium to purchase the Annuity and began receiving the Guaranteed Payment almost immediately and the Dividend Payment approximately a year later.

[13]Section 3631.1 specifically exempts all money or benefits to be paid or rendered under the Annuity either before or after it is paid or rendered.  Okla. Stat. tit. 36, § 3631.1.A.3.

[14]Section 407 specifically exempts Social Security benefits paid or payable from execution, levy, attachment, garnishment or other legal process.  42 U.S.C. § 407.

Mo. 2020) (citing In re Wood, 459 B.R. 263, 267 (Bankr. S.D. Ohio 2011); In re Moore,

214 B.R. 628, 631 (Bankr. D. Kan. 1997)).  Per the Tenth Circuit, tracing exempt funds in a

commingled fund is "an equitable substitute for the impossibility of specific identification."

United States v. Henshaw, 388 F.3d 738, 741 (10th Cir. 2004).

 Several methods of tracing exist, none of which perfectly address every situation;

consequently, courts must exercise their discretion "to select the method best suited to achieve a

fair and equitable result on the facts before them."  Henshaw, 388 F.3d at 139–40, 149 (citing

William Stoddard, Note, *Tracing Principles in Revised Article 9 § 9–315(B)(2): A Matter of*

*Careless Drafting, or an Invitation to Creative Lawyering*, 3 Nev. L.J. 135, 135 (Fall 2002)).

The most commonly used methods of tracing are:  the lowest intermediate balance test ("LIBT");

the percentage or pro rata approach; and the first in, first out method ("FIFO").  Tydings, 2020

WL 1510025.  The bankruptcy court in Tydings summarized the three methods as follows:

> **LIBT** – LIBT is typically applied where a debtor commingles his
> own funds with funds he is holding in trust for another. If the
> account balance drops to zero, the trust funds are lost and
> subsequent deposits are considered non-trust funds. If the account
> drops to a balance less than the amount of trust funds, but greater
> than zero, the trust funds are limited to the lowest intermediate
> balance in the account. Thus, this test is based on the fiction that
> the debtor would withdraw the non-trust funds first, retaining as
> much as possible of the trust funds in the account.  Tydings, 2020
> WL 1510025 (citing In re Marve, 484 B.R. 735, 738 (Bankr. N.D.
> Ind. 2013)).

> **Percentage** – The percentage approach requires the determination
> of the exempt funds to the account total when the deposit is made.
> That percentage is then applied to the disputed funds (i.e., the
> balance in the account on the petition date) to determine the
> portion of exempt funds and non-exempt funds in the account.
> Tydings, 2020 WL 1510025 (citing In re Ross, 2012 WL 3817792
> (Bankr. S.D. Ind. Sept. 4, 2012)). This method assumes that no

> intermediate deposits are made between the initial deposit of the exempt funds and the petition date. <u>Tydings</u>, 2020 WL 1510025.
>
> **FIFO** – FIFO is a standard accounting method. The initial fact which must be established is the balance in the account immediately preceding the deposit of the exempt funds. <u>Tydings</u>, 2020 WL 1510025 (citing <u>Marve</u>, 484 B.R. at 741). From there, FIFO assumes the first funds deposited in a commingled account are also the first funds withdrawn from that account. <u>Tydings</u>, 2020 WL 1510025 (citing <u>In re Christensen</u>, 149 P. 3d 40, 50 (Nev. 2006)).[15]

In selecting a method of tracing, the policy underlying the exemption, and the general rule that exemption statutes are to be liberally construed, must be considered. <u>In re Lantz</u>, 451 B.R. 843, 848 (Bankr. N.D. Ill. 2011).

LIBT is most often used by courts when tracing funds in the context of conversion or breach of trust. <u>Tydings</u>, 2020 WL 1510025; <u>Lantz</u>, 451 B.R. 843 (court used LIBT because it was most consistent with receipt and proposed use of homestead proceeds in commingled account). The Bank Account funds do not fall into this category. LIBT is, thus, not appropriate, and, neither Debtor nor Trustee argue LIBT is the proper tracing method.

Nor is the percentage or pro rata method of tracing appropriate. The Bank Account contains deposits from other sources, <u>i.e.</u> the RMDs from the IRA as well as Debtor's periodic deposits. The percentage method is, therefore, also inapplicable. <u>Tydings</u>, 2020 WL 1510025.

---

[15]A fourth method, "last-in, first out" ("LIFO"), exists pursuant to which withdrawals against the commingled fund reduce the most recent deposits first. <u>In re Wiltsie</u>, 463 B.R. 223, 228 (Bankr. N.D. N.Y. 2011) (citing <u>Foley v. Transocean Ltd.</u>, 272 F.R.D. 126, 129 (S.D. N.Y. 2011)). The Court could not find any example where a court used this method to trace exempt funds in a commingled account, and neither Debtor nor Trustee suggested it was the appropriate method for tracing the funds in the Bank Account.

A significant number of courts use FIFO when tracing commingled funds in a debtor's bank accounts. Tydings, 2020 WL 1510025; In re Lichtenberger, 337 B.R. 322, 324–326 (Bankr. C.D. Ill. 2006) (court used FIFO to trace social security proceeds under principle that exemptions are to be construed liberally to protect the debtor). FIFO makes the "most sense in cases, such as the one under consideration, in which several deposits were made between the time the initial exempt funds were deposited into the commingled account and the debtor's petition date." Tydings, 2020 WL 1510025 (citing In re Lichtenberger, 337 B.R. 322, 323 (Bankr. C.D. Ill. 2006)).

Debtor does not suggest any recognized method of tracing to determine the exempt portion of the Bank Account. Rather, Debtor simply states she spent the non-exempt funds first, i.e. the RMDs and her periodic deposits. Consequently, because the amount of the withdrawals exceeds the amount of the RMDs and periodic deposits, Debtor argues everything remaining in the Bank Account on the Petition Date is exempt. The Court rejects Debtor's suggestion – had Debtor sought to only use non-exempt funds, she should have put exempt funds in a segregated account. But she did not. "If one were to implement sound pre-bankruptcy planning in relation to the issue of utilization of exempt funds, or deposit of exempt funds into a bank account, it would be a relatively easy matter to segregate the exempt funds into a separate account so that they could be entirely traced to that account and their use totally accounted for. That would be a perfect world of pre-bankruptcy planning, a world which – let's face it – does not exist." In re Marve, 484 B.R. 735, 739 (Bankr. N.D. Ind. 2013).

Additionally, it is disingenuous at best for Debtor to suggest she intended to first use her periodic deposits and the RMDs. At the time the RMDs were deposited into, and when Debtor

made her withdrawals from the Bank Account, Debtor testified she believed, although wrongly, the RMDs, like the Social Security benefits and the Annuity distributions, to be exempt.  When Debtor filed this bankruptcy case, based on her Schedule C, as amended, and through July 20, 2020, Debtor believed the RMD proceeds in the Bank Account to be exempt.  If Debtor believed the RMD distributions to be exempt, she would have no reason to spend those funds first – it is paradoxical to her stated position that all funds deposited in the Bank Account, except her periodic deposits, were exempt retirement funds.  Thus, the Court rejects Debtor's suggested, albeit unrecognized, method of tracing as unsupported by the facts and the law.  See In re Wharton-Price, No. 9, 2015 WL 4230856 (Bankr. M.D. Fla. 2015) ("But because Debtor did not segregate the EIC portion of the Refund, the Court is unable to directly "trace" the funds in the Account to the exempt EIC. When confronted with what is essentially a commingling question, courts generally follow one of three approaches to determine how to trace the exempt portion of the deposit.").

The Court agrees with the Marve court that LIBT method and the percentage method "create an encapsulation of exempt funds which does not in fact exist as the account owner's intent" and creates a "preference for exemption construction beyond its boundary."  Marve, 484 B.R. at 741.  This Court adopts FIFO as the method of determining the exempt and non-exempt funds in the Bank Account.[16]  Trustee's expert prepared a FIFO analysis of the Bank

---

[16]In rejecting the LIBT and percentage tracing methodology for tracing commingled exempt and non-exempt funds, one bankruptcy court noted:

> There is always a tension in cases involving co-mingled funds in any context – a tension between who is ultimately entitled to portions of the fund at issue. In the context of this case, the tension

(continued...)

Account, Trustee Ex. 10, p. 2, which Debtor failed to successfully discredit.  Moreover, the Court undertook to prepare its own FIFO analysis prior to the hearing, and its conclusions correspond with Trustee's Accountant's conclusions.

Accordingly, based on a FIFO analysis, the balance of the Bank Account on the Petition Date is allocated between exempt and non-exempt funds as follows:

| SOURCE | EXEMPT | NOT EXEMPT |
|---|---|---|
| Social Security benefits | $17,476.00 | |
| Annuity proceeds | 16,790.78 | |
| IRA RMDs | | $21,772.79 |
| Other deposits | | 13,594.28 |
| Interest[17] | 279.08 | 290.47 |
| TOTAL | $34,545.86 | $35,657.54 |

---

[16](...continued)
> is between the debtor claiming exemption, and creditors of the debtor who stand to benefit if funds are not determined to be exempt.

While it is true that exemptions are to be literally construed in favor of the debtor, in this court's view that principle ceases to be operative when exempt funds are co-mingled with non-exempt funds. At that point the actual use of co-mingled funds – i.e., the manner in which people use fungible deposits into a bank account – controls. The LIBT method and the proportional use method create an encapsulation of exempt funds which does not in fact exist as the account owner's intent, and continue the preference for exemption construction beyond its boundary.

Marve, 484 B.R. at 740–741.

[17]Interest was allocated among each category of funds as follows:  25% Social Security benefits; 24% Annuity distributions; 31% IRA RMDs; and 20% miscellaneous deposits.

The exempt funds traceable to the Social Security benefits and the Annuity distributions total $34,545.86; the remaining $35,657.54 is not exempt as traceable to the RMDs from the IRA and the miscellaneous deposits made by Debtor.

## **CONCLUSION**

For the reasons set forth above, the Objection is GRANTED in part and DENIED in part. The Annuity and the distributions therefrom are exempt under Okla. Stat. tit. 36, § 3631.1.  The monies in the Bank Account are exempt under Okla. Stat. tit. 36, § 3631.1 and 42 U.S.C. § 407 in the amount of $34,657.54, with the remaining $35,657.54 in the Bank Account on the Petition Date not exempt.

IT IS SO ORDERED.

#   #   #